1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOLE TOKARSKI, on behalf of herself and all others similarly situated, | CASE NO. 2:21-cv-00631-TL |
| Plaintiff, | ORDER ON MOTION TO CONSOLIDATE CASES AND MOTION TO TRANSFER |
| v. | |
| MED-DATA, INC., | |
| Defendant. | |

Pending before the Court are Plaintiff's motion to consolidate and appoint interim class counsel and Defendant's motion to transfer venue. Dkt. Nos. 22 and 29. The Court has reviewed all filings associated with these two motions. For the reasons detailed below, the Court STRIKES IN PART and DENIES IN PART the motion to consolidate and appoint interim class counsel and DENIES Defendant's motion to transfer venue.

## I.   BACKGROUND

### A.   Defendant and the Data Breach

Defendant Med-Data, Inc. ("MedData") is incorporated in Washington, Dkt. No. 29 at 4, has an office in Spokane and 61 employees across the state, *id.*, and corresponded with at least some customers (including Plaintiff) about the data breach from Everett, Washington, Dkt. No. 43 at 4. After the data breach, Defendant moved its corporate headquarters to the Southern District of Texas in 2020 and now has its principal place of business there. Dkt. No. 29 at 1; Dkt. No. 43 at 5. The data breach was caused by Defendant MedData's former employee, Zulfiqar "Bobby" Faruqi, who lives in Texas. Dkt. No. 29 at 3, 8; Dkt. No. 30-1 at 2–3.

Several cases arising out of the same data breach have been filed in various courts across the country. Dkt. No. 22 at 6 (listing five such cases). While some of these cases have been dismissed, two are currently pending before other federal district courts: *M.S., et al. v. Med-Data, Inc.*, 4:22-cv-00187 (Southern District of Texas) (referred to as "the *M.S.* case") and *C.C. v. Med-Data, Inc.*, 2:21-cv-02301-DDC-GEB (District of Kansas) ("the *C.C.* case"). Like the instant case, both the *M.S.* and *C.C.* cases are in the pre-class certification stages. The pending motion for consolidation would combine the instant case and the *M.S.* case. Plaintiffs in the *M.S.* case ("Respondents" in the *Tokarski* action) filed an opposition to Plaintiff Tokarski's Motion for Consolidation and Appointment of Interim Class Counsel on behalf of M.S. as well as another plaintiff, D.H. Dkt. No. 35.

### B.   The *Tokarski* Action

On March 31, 2021, Defendant MedData sent a letter to Plaintiff Nicole Tokarski, advising her that her daughter's protected health information had been published on a public website by a MedData employee sometime between December 2018 and September 2019. Dkt.

No, 43 at 4; Dkt. No. 44-1 at 2. The MedData letter had a return address in Everett, Washington. Dkt. No. 44-1 at 2.

On April 12, 2021, Plaintiff, a Montana resident, filed a class action complaint in King County Superior Court alleging four causes of action in connection with the data breach: (1) negligence, (2) invasion of privacy (intrusion upon seclusion), (3) violation of the Washington Data Breach Notice Act, RCW 19.255, *et seq.*, and (4) violation of the Washington Consumer Protection Act, RCW 19.86, *et seq*. *See* Dkt. No. 1-1 at 7–14. On May 12, 2021, Med-Data removed the case to the Western District of Washington. Dkt. No. 1 at 1. Defendant answered the complaint on May 26, 2021. Dkt. No. 11.

Washington-based MedData counsel have assisted Plaintiff Tokarski in receiving initial discovery responses from Defendant. Dkt. No. 43 at 7. Over the summer, the parties conducted a Rule 26(f) initial planning conference, exchanged initial disclosures, and filed a Joint Status Report and Discovery Plan. Dkt. No. 22 at 5. Discovery is underway. *See id.* at 6 (filing from six months ago describing how Plaintiff had already served written discovery); *id*. at 10 (explaining that counsel had already engaged in "numerous communications" with each other regarding how "to move the discovery process forward"); Dkt. No. 39 at 4 (describing that Plaintiff "has worked cooperatively with Med-Data's counsel to obtain key information about the scope and value of the case, including the number of class members, the nature and type of information disclosed in the breach, and Med-Data's internal analysis of the breach"); Dkt. Nos. 44-3, 44-4, and 44-5 (documents produced in discovery and responses to interrogatories attached as exhibits to a filing). On September 27, 2021, the Court approved a stipulated and HIPAA qualified protective order that designates certain protected health information and business information as confidential. Dkt. No. 42 at 2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**C.     The *M.S.* Action**

Plaintiff Tokarski's case appears to be the first-filed suit related to the data breach at issue. *See* Dkt. No. 39 at 4. While Ms. Tokarski's case was filed on April 12, 2021, Dkt No. 1, the *M.S.* and *C.C.* cases (as well as the two state court cases referenced in Respondents' opposition) were all filed after that date. Dkt. No. 35 at 4–5.

Upon learning about additional cases pending before federal courts, counsel for the *M.S.* case "agreed with defense counsel and [ ] counsel for Plaintiffs C.C. and D.H.[ ] to dismiss the action in Texas and re-file as a consolidated action in this Court to avoid an unnecessary MDL [Multi-District Litigation] proceeding." *Id.* at 5; Dkt. No. 50 at 3 (same); *see also* Dkt. No. 35 at 12 (explaining that case was dismissed "in recognition of the JPML's [Judicial Panel on Multidistrict Litigation's] recent position that parties in matters with only a handful of cases should attempt to cooperate and work among themselves to centralize a case"). Thus, on August 9, 2021, a consolidated plaintiffs group led by counsel William B. Federman of Federman & Sherwood and Maureen M. Brady of McShane & Brady, LLC, filed the case *M.S. & D.H., et al. v. Med-Data, Inc.*, 2:21-cv-01059, in the Western District of Washington. *See id.* at 4. The next day, Mr. Federman and Ms. Brady filed a Notice of Related Case in the *M.S.* case explaining that both the *M.S.* and *Tokarski* actions "challenge[] a similar course of conduct, and involve[] the same Defendant," and that "it is likely that there will be significant overlap in legal argument and evidence across the two actions" such that it would be inefficient and create a "potential for conflicting results" for them to be assigned to different judges, while noting that "the claims and proposed class definitions" differed. Notice of Related Case at 1, *M.S. v. Med-Data, Inc.*, No. 2:21-cv-01059 (W.D. Wash. Aug. 10, 2021), ECF No. 2. The *M.S.* case was then re-assigned to the same district court judge before whom the instant case was pending.

1    Like Plaintiff in the instant case, Respondents sought certification of a nationwide class.

2    Class Action Complaint at 23, *M.S. v. Med-Data, Inc.*, No. 2:21-cv-01059 (W.D. Wash. Sep. 30,

3    2021), ECF No. 1. Respondents' complaint in this district included eleven causes of action,

4    including a violation of the Washington Consumer Protection Act on behalf of the nationwide

5    class and violations of the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et*

6    *seq.*) on behalf of a Missouri-based sub-class. *Id.* at 26–45.

7    **D.    The Motion to Consolidate and Motions to Transfer**

8    On September 9, 2021, Plaintiff Tokarski filed a motion to consolidate the *M.S.* and

9    *Tokarski* actions and sought appointment of her attorneys as interim class counsel during the pre-

10   certification stage. Dkt. No. 22.

11   On September 17, 2021, Defendant MedData filed a motion to change venue in this

12   instant case to the United States District Court for the Southern District of Texas pursuant to 28

13   U.S.C. § 1404(a). Dkt. No. 29 at 1. On October 12, 2021, Plaintiff Tokarski filed an opposition

14   to the motion to change venue. Dkt. No. 43. Respondents support the motion to transfer. *See* Dkt.

15   No. 50 at 4.

16   On September 30, 2021, Defendant MedData filed a motion to change venue to the

17   Southern District of Texas in the *M.S.* case. Defendant Med-Data, Inc.'s Motion re Forum Non

18   Conveniens, *M.S. v. Med-Data, Inc.*, No. 2:21-cv-01059 (W.D. Wash. Sep. 30, 2021), ECF No.

19   21. Respondents filed a brief in support of the motion to transfer, explaining that they "[had]

20   been discussing the possibility of transfer" to that district with Defendant. Response by Plaintiffs

21

22

23

24

1    D.H., M.S. to Motion to Change Venue at 2, *M.S. v. Med-Data, Inc.*, No. 2:21-cv-01059 (W.D.

2    Wash. Oct. 15, 2021), ECF No. 27.[1] Specifically, they represented that:

> Plaintiffs' counsel and counsel for Med-Data have been discussing the possibility of
> transfer to the Southern District of Texas. Plaintiffs' counsel advised counsel for Med-
> Data of their proposed leadership structure explained *supra* (*see* Response in Opposition
> in the *Tokarski* Action, filed on September 20, 2021 (*Tokarski* Action ECF No. 35)) and
> counsel for Med-Data had no opposition to Mr. Federman's and Ms. Brady's
> appointment as interim co-lead class counsel.

*Id.* In its reply, Defendant did not dispute or otherwise comment on the representations made by

Respondents. *See generally* Reply in Support of Defendant Med-Data, Inc.'s Motion re Forum

Non Conveniens, *M.S. v. Med-Data, Inc.*, No. 2:21-cv-01059 (W.D. Wash. Sep. 30, 2021), ECF

No. 28.

    In December 2021, two new district court judges joined the Western District of

Washington at Seattle, and the *M.S.* and *Tokarski* actions were separated, with the cases being

transferred to these two different judges. Both motions to transfer were still pending at that point.

On January 14, 2022, the Seattle district judge presiding over the *M.S.* case granted the

unopposed motion to change venue in that case. Order Granting Defendant's Motion re Forum

Non Conveniens, *M.S. v. Med-Data, Inc.*, No. 2:21-cv-01059 (W.D. Wash. Jan. 14, 2022), ECF

No. 31.

    On February 18, 2022, the Court held a status conference attended by counsel for

Plaintiff and Defendant. Dkt. No. 59. During that conference, Plaintiff's counsel agreed that the

motion to consolidate has been mooted by the transfer of the related *M.S.* case, 2:21-cv-01059-

---

[1] A court may, *sua sponte*, take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. These include documents filed in proceedings before other courts. *Pearson v. Wash. Mutual Bank, N.A.*, 801 Fed.Appx. 586 (Mem) (9th Cir. Apr. 16, 2020) (affirming that a district court "may take judicial notice of court records in another case"). "While the court cannot accept the veracity of the representations made in the documents, it may properly take judicial notice of the existence of those documents and of the representations having been made therein." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012) (internal citation and quotation omitted).

LK (now 4:22-cv-00187), to the Southern District of Texas. *Id*. Plaintiff's counsel also represented that Plaintiff intends to intervene in the *M.S.* case to seek a stay under the first-filed doctrine and that she is still seeking to have her counsel appointed as interim class counsel as requested in the pending motion. *Id*.

## II.   DISCUSSION

### A.   Motion to Consolidate Cases and Appointment of Interim Class Counsel

Plaintiff agrees that the motion to consolidate has been rendered moot by the transfer of the *M.S.* case to a different judicial district. Thus, the Court strikes as moot that portion of Docket Number 22.

Still pending, however, is Plaintiff's request to have her counsel be appointed interim class counsel. Under the Federal Rules of Civil Procedure, a district court "may" designate interim counsel prior to class certification. Fed. R. Civ. P. 23(g)(3). The commentary to this rule further notes that a court is authorized to designate interim counsel "if *necessary* to protect the interests of the putative class." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment (emphasis added). Appointment of interim class counsel is discretionary and particularly suited to situations where "a number of lawyers may compete for class counsel appointment" due to "a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated."  Manual for Complex Litig. (Fourth) § 21.11 (2021); *see also In re LinkedIn Advert. Metrics Litig.*, No. 20-cv-08324-SVK, 2021 WL 1599289, at *1 (N.D. Cal. Apr. 23, 2021) ("Under the circumstances of this case, the Court sees no danger to the interests of the putative class that appointment of interim counsel will remedy."); *Donaldson v. Pharmacia Pension Plan*, No. CIV. 06-3-GPM, 2006 WL 1308582, at *1 (S.D. Ill. May 10, 2006) ("the kind of matter in which interim counsel is appointed is one where a large number of putative class actions have been consolidated or otherwise are pending in a single court").

1    As discussed, appointment of interim class counsel usually occurs where suits may or

2  have been consolidated but with the transfer of the *M.S.* case to Texas, consolidation is no longer

3  appropriate, as admitted by Plaintiff. Further, the Court is not aware of any precedent for

4  appointing interim counsel where the other cases are pending before not only another judge but

5  also a judge in a completely different state and/or jurisdiction.

6    Additionally, Respondents state that the *M.S.* and *Tokarski* actions can be efficiently

7  coordinated even in the absence of consolidation (and Defendant has taken no position on the

8  issue). *See* Dkt. No. 35 at 6 (noting that Respondents "are willing to work cooperatively with the

9  *Tokarski* Action and coordinate common discovery to avoid duplication"). Coordination of the

10  *M.S.* and *Tokarski* actions, even across two judicial districts, will not be overly cumbersome.

11  There are plenty of means available for the parties to coordinate discovery and otherwise

12  cooperate in litigating their parallel class actions, such as making depositions from one

13  proceeding applicable to all actions, scheduling and cross-noticing depositions, and coordinating

14  document production as well as electronic discovery arrangements. *See* Manual for Complex

15  Litig. (Fourth) § 20.313 (2021). In addition, Plaintiff Tokarski has indicated an intent to seek a

16  stay of similar cases pending before other federal courts under the first-to-file doctrine. *See* Dkt.

17  No. 22 at 15.[2]

18    Plaintiff has failed to demonstrate that there are significant benefits to appointing her

19  counsel as interim class counsel in the absence of consolidation of the *M.S.* and *Tokarski* actions.

20  The Court thus DENIES the request for appointment of interim class counsel.

21

22

---

[2] The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline
23  jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another
district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). According to the parties'
representations, the instant action is the oldest remaining federal court case regarding the data breach at issue. *See*
24  Dkt. No. 33 at 3–4; Dkt. No. 35 at 4–6; Dkt. No. 39 at 7.

1    **B.     Motion to Transfer**

2          As a threshold issue, though Defendant has titled its motion to transfer as a "Motion re

3    *Forum Non Conveniens*," the statute it invokes to effectuate the transfer (*i.e.*, 28 U.S.C. §

4    1404(a)) has largely displaced the common law doctrine of *forum non conveniens*. *Decker Coal*

5    *Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (further explaining that

6    "[n]onetheless, *forum non conveniens* considerations are helpful in deciding a § 1404 transfer

7    motion").

8          "For the convenience of parties and witnesses, in the interest of justice," this Court has

9    the power to transfer a case before it "to any other district . . . where it might have been brought."

10   28 U.S.C. § 1404(a). Venue is proper in, *inter alia*, "a judicial district where [the] defendant

11   resides," which is in turn defined for corporate entities as any district in which that defendant is

12   subject to the court's personal jurisdiction. 28 U.S.C. § 1391. A corporate defendant is subject to

13   the personal jurisdiction of the judicial district where its principal place of business is located.

14   *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) ("The paradigm all-purpose forums for

15   general jurisdiction are a corporation's place of incorporation and principal place of business.").

16         The first requirement of § 1404(a) is clearly met: This action could have been filed in the

17   Southern District of Texas. Venue is proper and the requirement of personal jurisdiction is

18   satisfied as Defendant MedData resides there.

19         As to the second requirement, a "district court has discretion to adjudicate motions for

20   transfer according to an individualized, case-by-case consideration of convenience and fairness."

21   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v.*

22   *Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (internal quotations omitted); *see also Meijer, Inc. v.*

23   *Abbott Labs.*, 544 F.Supp.2d 995, 999 (N.D. Cal. 2008) ("No single factor is dispositive."); *but*

24   *see Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256, 1259 (W.D. Wash. 2005) (where the

1   transferee court is an appropriate venue, the decision to transfer "turns on whether the Court

2   finds such transfer to be proper under the 'convenience of parties and witnesses' and 'interest of

3   justice' standards").

4          In the instant case, the parties disagree on which set of factors is relevant. Defendant cites

5   nine factors largely flowing from the private and public interest factors considered in

6   adjudicating *forum non conveniens* motions, *see* Dkt. No. 29 at 5, while Plaintiff follows the

7   factors laid out in *Jones*, *see* Dkt. No. 43 at 6–9; *see also Jones*, 211 F.3d at 498–99. While a

8   number of the factors are similar under either approach, the Court has reviewed and considered

9   *all* the factors raised by the parties in their briefing except for one —*i.e.*, the feasibility of

10  consolidation of other claims— which Defendant mentioned in passing but neither party

11  addressed. *See* Dkt. No. 29 at 5. The Court has considered the following factors in rendering its

12  decision: (1) Plaintiff's choice of forum; (2) the parties' relationships with each forum; (3)

13  convenience of the witnesses (party and non-party); (4) ease of access to the evidence; (5)

14  differences in the cost of litigation in the two forums; (6) the location where the relevant

15  agreements were negotiated and executed; (7) familiarity of each forum with the applicable law;

16  (8) the relative court congestion in each forum; (9) any local interest in the controversy; and

17  (10) the interests of justice. *See generally Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of*

18  *Texas*, 571 U.S. 49, 63 (2013); *Jones*, 211 F.3d at 498–99. The Court also notes that

19  Respondents support the motion to transfer. *See* Dkt. No. 50 at 3.

20          1.    Plaintiff's Choice of Forum

21          Plaintiff Tokarski chose to file in the Western District of Washington. Defendant

22  correctly notes that in class action cases, the named plaintiff's choice of forum is given less

23  weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). This factor weighs only slightly in

24  favor of Plaintiff.

1    2.    <u>The Parties' Relationships with Each Forum</u>

2    Several of the factors cited by the parties (the parties' contacts with each forum, the

3    contacts relating to Plaintiff's cause of action in the chosen forum, and convenience of the parties

4    more broadly) turn largely on the same evidence and get to the same issue: whether the parties

5    have more connections to Texas or to Washington. Thus, the Court analyzes these factors in

6    tandem.

7    Plaintiff is a Montana resident and does not allege any special connection to Washington.

8    *See* Dkt. No. 1-1 at 1–2. Still, the present forum has significant connections to the dispute, as the

9    place where Defendant is incorporated, has staff and offices, and from which it directed

10   communications to Plaintiff and other potential class members about the data breach (and those

11   notification procedures gave rise to a claim under Washington law). Dkt. No. 43 at 4, 5; Dkt. No.

12   1-1 at 11–12; *see also id.* at 7 (Plaintiff claims that Defendant "directed communication about the

13   data breach to Plaintiff (and every other class member) from Washington"). Plaintiff claims to

14   have "no contact" with Texas. *Id*. at 7–8.

15   Defendant is now headquartered in (post-data breach) and maintains its principal place of

16   business in Texas. Dkt. No. 29 at 6–7. The data security breach giving rise to the suit occurred in

17   Texas. *Id*. at 7.

18   Though nearly twenty-four times as many putative class members reside in Texas than in

19   Washington, Dkt. No. 29 at 9, this, on its own, does not sway the Court's calculus, as no class

20   has yet been certified. *See Davis v. PSCU Inc.*, No. 2:16-cv-10607, 2016 WL 3903034, at *3

21   (E.D. Mich. July 19, 2016) ("Because the Court cannot predict where the greatest number of

22   class members might eventually hail from, it would be premature to determine that [] any venue

23   [] is the most convenient based solely on the putative class allegations.").

24

As the conduct most centrally giving rise to the dispute occurred in Texas, this factor weighs in Defendant's favor.

### 3.   Convenience of the Witnesses (Party & Non-Party)

The convenience of party and non-party witnesses is often broken up into two factors (the convenience of the witnesses and availability of compulsory process). As these factors are strongly aligned in the present case, the Court reviews them together. Courts in the Ninth Circuit have held that that convenience of the witnesses is among the most important factors in a motion to transfer. *See, e.g.*, *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005). And "[w]hen considering the convenience to witnesses, the convenience of *non-party* witnesses is the more important factor." *Amazon.com*, 404 F. Supp. 2d at 1260 (internal citation and quotation omitted) (emphasis added).

Most of Defendant's party witnesses are in Texas. Dkt. No. 29 at 7. The non-party witnesses are scattered in different parts of the country, including some in Washington and some in Texas. *Id*. at 7–8; Dkt. No. 43 at 8–9; Dkt. No. 44 at 11–12. Plaintiff Tokarski would have to travel to either forum. Dkt. No. 29 at 7.

The non-party witness who caused the data breach at issue, Mr. Faruqi, is likely to be a key witness in the case. Dkt. No. 29 at 8. He resides in Texas. *Id*. As Defendant notes, a subpoena can require a non-party witness' attendance of a trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state" where the person does the above if they are "commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1). Though Defendant has failed to state specifically *where* in the state Mr. Faruqi or two other former employees who investigated and responded to

the breach reside,[3] Defendant has represented that three "necessary" non-party trial witnesses

reside in Texas. Dkt. No. 29 at 8. However, as Plaintiff notes, for the moment Mr. Faruqi is

cooperating without court intervention, Defendant has not identified these two non-party former

employees residing in Texas or what relevant information they possess, and some non-party

witnesses reside in other states, including Washington. Dkt. No. 43 at 8–9; *see also* Dkt. No. 30-

1 (Affidavit of Zulfiqar (Bobby) Faruqi). Moreover, the non-party witnesses' testimony can be

preserved in other forms, such as via deposition or affidavit. *See Whitmire v. S. Farm Bureau*

*Life Ins. Co.,* No. 5:20-cv-00018-M, 2020 WL 9763067, at *4 (E.D.N.C. May 20, 2020); *see also*

Fed. R. Civ. P. 32(a)(4)(B) (allowing use of deposition at trial where witness is over 100 miles

away); Dkt. No. 29 at 8 (Defendant notes that "[w]ith nationwide service of process, all potential

trial witnesses can be subpoenaed for deposition").

    Given the uncertainty surrounding the convenience of either forum to the non-party

witnesses—and with non-party witnesses located in Washington, Texas, and elsewhere—the

Court finds this factor neutral.

    4.    Ease of Access to the Evidence

    Defendant claims that "all" evidence about its data security policies, procedures, and

technical infrastructure is based in Texas. Dkt. No. 29 at 8. However, MedData's Washington

counsel has already shared those security policies and procedures with Plaintiff's counsel. Dkt.

No. 43 at 9. Further, the reality is that "[m]odern technology tends to make access to

---

[3] Defendant's reply to the motion to transfer did not clarify whether Mr. Faruqi currently resides within the jurisdiction of the Southern District of Texas and only vaguely states that the other six witnesses reside in Texas. Dkt. No. 51 at 2 (stating only that Mr. Faruqi used to work for MedData at The Woodlands, Texas, location and subsequently executed an affidavit in Montgomery, Texas); Dkt. No. 53 at 2 (simply noting that "[i]n addition to Zulfiqar Faruqi, five of the eight MedData employees and former employees who are responsible for MedData's data security policies and technical infrastructure, and who participated in investigating and responding to the data security incident, reside in Texas"). Defendant's filings make  it impossible to discern whether those witnesses are within 100 miles of the courthouse or whether those witnesses would incur substantial expense if commanded to attend a trial.

documentary proof easy from virtually any location." *Cave Man Kitchens Inc. v. Caveman Foods, LLC*, No. 2:18-cv-01274 RAJ, 2019 WL 3891327, at *8 (W.D. Wash. Aug. 19, 2019). The Court discounts this factor as one that is no longer relevant in the modern era. *See, e.g.*, *Tate v. Brinderson Constructors, Inc.*, No. 16-cv-04314-VC, 2016 WL 7387430 at *1 (N.D. Cal. Dec. 21, 2016) (noting that many of the *Jones* factors are now "outdated"). Plaintiff maintains that this factor is neutral. The Court agrees and so does not consider it.

       5.   <u>Differences in the Costs of Litigation in the Two Forums</u>

As with the factor above, the difference in the cost of litigation is now of far less import due to technological advancements that allow for remote access to evidence, witnesses, and counsel. In addition, Defendant's cybersecurity operations and data breach response "happened all across the country" and some of the relevant groups involved are located outside of Texas, including two that are in Washington state (Digital Fortress and IDX). Dkt. No. 43 at 8. In the reply brief, Defendant counters that neither Digital Fortress nor IDX have relevant witnesses. Dkt. No. 51 at 3–4. The Court finds this factor insignificant and, in any event, a neutral one not in favor of either party.

       6.   <u>The Location where the Relevant Agreements were Negotiated and Executed</u>

Defendant does not mention this factor, and Plaintiff states that it is neutral as she lacks information about where Defendant entered into relevant contracts with healthcare providers. Dkt. No. 43 at 6. Therefore, the Court considers this factor neutral.

       7.   <u>Familiarity of Each Forum with the Applicable Law</u>

Defendant concedes that the Western District of Washington is more familiar with the two Washington state law statutes under which Plaintiff alleges claims. Dkt. No. 29 at 9. This factor weighs in Plaintiff's favor.

1       8.  <u>The Relative Court Congestion in Each Forum</u>

2      Plaintiff does not make any claim regarding relative court congestion, and Defendant

3    concedes that this factor is neutral. *See* Dkt. No. 29 at 10. The Court does not attempt to

4    independently analyze this factor and treats it as neutral.

5       9.  <u>Any Local Interest in the Controversy</u>

6      Defendant claims that there is a local interest in citizens deciding matters pertaining to

7    businesses headquartered in their state. Dkt. No. 29 at 9. Plaintiff claims that this factor is

8    neutral, as both states have an interest in protecting their citizens from data breaches. Dkt. No. 43

9    at 9. Plaintiff further claims that "Texas has no special interest in a corporation that moved its

10   headquarters there only after the breach." *Id*. Though Texas' interest in the controversy may be

11   somewhat more substantial given its greater connection to Defendant, Defendant is not among

12   Texas' biggest employers and has only recently moved its headquarters there. The Court

13   considers this factor as neutral.

14      10.  <u>The Interests of Justice</u>

15     "[T]he overarching consideration under § 1404(a) is whether a transfer would promote

16   'the interest of justice.'" *Atl. Marine Const. Co.*, 571 U.S. at 63. Neither party addresses this

17   factor that some courts in this district have determined to be "the most important of all" factors

18   in deciding a motion to transfer under 28 U.S.C. § 1404(a). *See, e.g.*, *Amazon.com*, 404 F. Supp.

19   2d at 1261; *accord Wiley v. Trendwest Resorts, Inc.*, No. C 04-4321 SBA, 2005 WL 1910934

20   (N.D. Calif. Aug. 10, 2005) ("The 'interests of justice' consideration is the most important factor

21   a court must consider, and may be decisive in a transfer motion even when all other factors point

22   the other way.") (internal citation omitted).

23     Included in the Court's consideration of the interests of justice is promoting judicial

24   economy. *Id*. There are times when "[c]onservation of judicial resources mandates transfer." *See,*

ORDER ON MOTION TO CONSOLIDATE CASES AND MOTION TO TRANSFER - 15

*e.g.*, *Starbucks Corp. v. Wellshire Farms, Inc.*, No. C13-1170-MJP, 2013 WL 6729606, at *5 (W.D. Wash. Dec. 18, 2013) (transferring case out of the Western District of Washington). Unfortunately, here, judicial resources will be squandered regardless of how the Court rules on the motion to transfer. The Western District of Washington has already spent judicial resources presiding over this matter (including ruling on a motion to seal in conjunction with the motion to transfer, *see* Dkt. No. 61), and the parties had been litigating (and progressing with discovery) in this forum for months before Defendant filed the motion to transfer. *See supra* Section I.B. And this says nothing about the yoyo trip of the *M.S.* case, in apparent consultation with Defendant, from Texas to Washington back to Texas again.

This motion to transfer is a close call, and had Defendant filed its motion to transfer at the outset of this case, the Court likely would have granted it. However, the Court is troubled by the specific facts of what has occurred since the filing of this case, specifically: (1) the travels of the *M.S.* case from the Southern District of Texas to the Western District of Washington and then back to the Southern District of Texas (with apparent cooperation between counsel for Defendant and counsel for Respondents), *see supra* Sections I.C. and D.; (2) the Defendant's delay of over five months in filing the motion to transfer; and (3) the timing of Defendant's motion, *i.e.*, the motion was filed after Defendant proceeded into discovery in Washington and only after Plaintiff Tokarski filed a motion to consolidate and for appointment of interim counsel in an apparent rift amongst plaintiffs' counsel. *See* Dkt. No. 39 at 5 ("The M.S. attorneys suggest that it was somehow improper for the Terrell Marshall Group to have prepared their motion [to consolidate and for appointment of interim counsel] before conferring with them and to file shortly after the call when it was evident that agreement was not possible."). Defendant cannot see how a case progresses for months in one court and then attempt to choose a different forum and opposing counsel against whom to litigate. This type of gamesmanship cannot be rewarded. After

weighing the above factors, the Court denies Defendant's motion to transfer the case to the Southern District of Texas. The Court is heavily swayed by the interests of justice factor.

### III.   CONCLUSION

Plaintiff's Motion to Consolidate Cases and Appointment of Interim Class Counsel is STRICKEN AS MOOT IN PART and DENIED IN PART, and Defendant's motion to transfer venue is DENIED.

IT IS SO ORDERED.

Dated this 17th day of March 2022.

Tana Lin
United States District Judge

ORDER ON MOTION TO CONSOLIDATE CASES AND MOTION TO TRANSFER - 17